EDWARD DOWNES *vs.* WILLIS BRISTOL AND OTHERS.

*A* exchanged with *B* certain lands for certain city lots, upon a representation of *B* that the lots were provided with a sewer, which was not the fact. Upon a bill in equity brought by *A* to set aside the exchange on the ground of fraud in this representation of *B*, it was found that *B* supposed the fact to be as he stated and made the representation honestly, and that the sum of $722 would supply the defect. Held—1. That although, in this aspect of the case, there

would be adequate remedy at law, yet as equity had rightfully assumed juris-
diction, it would hold it and grant relief.   2.   That a proper decree would be
that *B* pay to *A* the sum of $722.

BILL IN EQUITY to set aside an exchange of lands; brought
to the Superior Court in New Haven County.   Facts found
by a committee and the case reserved for advice.   The case
is sufficiently stated in the opinion.

*Doolittle* and *W. C. Robinson,* for the petitioner.

*J. S. Beach,* for the respondents.

FOSTER, J.   The plaintiff owned a lot of land in New
Haven, and the defendants owned divers building lots in the
city of Brooklyn, in the state of New York.   After some
negotiation between the parties, a contract was made by
which the plaintiff was to convey his lot in New Haven to
Mr. Bristol, one of the defendants, in consideration of a
conveyance by him to the plaintiff of fifteen building lots in
Brooklyn.   At the same time, it was further agreed between
the parties that, in consideration of $400 in cash and of a
promissory note held by the plaintiff against a third person,
on which there was then due the sum of $5,100, payment of
which was guaranteed by the plaintiff, the defendant, Bristol,
should convey to the plaintiff four additional lots of land
in said city of Brooklyn.   When said contracts were entered
into, the parties supposed that the title to said lots in Brook-
lyn stood in the name of said Bristol, the president of the
New Haven County Bank, the other defendant in this suit,
but it was subsequently ascertained that the title to the same
was in the bank.   Proper deeds of conveyance of all the
aforesaid lots of land, owned respectively by the parties,
passing the title of the same from the one to the other, were
made and duly delivered by them, accompanied by a change
of possession, on the 12th of March, 1873.

The plaintiff now seeks a rescission of this contract on the
ground of fraud; with a prayer for such other relief as may
be proper upon the facts.

The plaintiff held his lot in New Haven at $22,500, and so

represented its value to the defendants. They represented to the plaintiff that their lots in Brooklyn were worth $1,500 each. Other representations were made by the defendants to the plaintiff as to the condition of their said lots. Among other improvements, they stated that assessments had been made for sewers, and that the lots had been sewered. The plaintiff, at the request of the defendants, visited Brooklyn before completing the contract, and made a not very thorough examination of the lots in question.

The committee finds that the fair cash value of the plaintiff's lot in New Haven, at the time of the contract, did not exceed $16,500 ; and that the fair cash value of said Brooklyn lots was not less than $1,000 each.

The allegations of fraud, made very emphatically in the bill, are not sustained by the finding. On the contrary, the committee says that " each party acted fairly and honestly in making said contracts, and no actual fraud or deceit was practised by either party. No representations were made by the respondents, or by the said Goodyear, [their agent,] that they did not believe, and have good reason to believe, were true, unless said Goodyear's assertion as to the value of said lots forms an exception. Both parties represented their property to be of greater value than its actual worth."

A mistake however, and that it was a mutual one does not diminish its effect, did intervene. Among the improvements which the defendants represented had been made on these Brooklyn lots, adding to their market value, and making them more desirable to purchasers, was, as we have already stated, that they had been sewered. The defendants believed this representation to be true, and it so appeared to the plaintiff in his cursory examination of the premises. The fact is found to be otherwise. No sewers for these lots were ever constructed. The defendants made their statement in good faith, and so they are fully exempt from any imputation of fraud. The loss to the plaintiff however is the same as if he had been imposed upon by deceit and fraud. The intention, the expectation of both parties, was disappointed by a mutual error.

There is an analogy, certainly, between a mutual mistake of parties, as in this case, as to the condition of land sold, and a mutual mistake as to the vendor's interest in the land sold.    The latter mistake is held good cause for setting aside the sale.    1 Story Eq. Jur., (10th ed.,) § 143; *Spurr* v. *Benedict*, 99 Mass., 463.

There may not be sufficient grounds for rescinding this contract, and we deem a rescission unnecessary, though we all think that the plaintiff is entitled to relief.    Good faith requires that these lots of the defendants should be put in the condition that they represented them to be when offered for sale or exchange, and that the plaintiff believed them to be when he contracted to take them, or that the plaintiff should be compensated in damages for the difference in value. It would be unconscientious to hold this plaintiff to his bargain, taking no account of that difference.

We cannot, as this property is situated, order the defendants to construct these sewers.    But the case finds, indeed the defendants' answer asserts, that these sewers can be constructed at a cost not exceeding $38 per lot.    Substantial justice, we think, will be done between the parties, by the payment of that sum to the plaintiff for each lot; and that sum, we think, ought to be paid.

Some members of the court have had some hesitation upon the question as to whether the plaintiff might not have relief at law; but in view of all the facts of the case, we think it comes within the cognizance of a court of equity; and where jurisdiction has once attached, such relief will be granted as the party shows himself entitled to.    To turn the plaintiff round to his remedy in a court of law would promote litigation rather than justice.

We advise the Superior Court to pass a decree in favor of the plaintiff for the sum of $722.

In this opinion the other judges concurred: except CARPENTER, J., who being ill did not sit in the case.