[Civ. No. 15134.   First Dist., Div. Two.   Mar. 13, 1953.]

JAMES WILSON et al., Appellants, v. LUPE H. SANCHEZ et al., Respondents.

Fred B. Hart for Appellants.

Paul D. Morse for Respondents.

GOODELL, J.—This is an appeal from a judgment in favor of the defendant in a suit seeking (a) the reformation of a contract, (b) the specific performance thereof, (c) declaratory relief, (d) possession, and (e) damages.

Respondent is the owner of an improved piece of real property in Oakland at the corner of Adeline and 36th Streets. On March 27, 1950, she agreed in writing to sell it to appellants for $6,500 "payable as follows: the sum of $1,000.00 within six months from date, to be evidenced by a promissory note payable six months from date and bearing no interest; and the balance thereof at the rate of $50.00 per month, first payment to be made 30 days after the said sum of $1,000 is completed and paid, and subsequent payments of $50.00 per month . . . until the whole of said $6500.00 shall have been paid." On March 29, 1950, appellants signed a promissory note for $1,000 payable to respondent "six months after date."

The complaint alleges: "That it was the intention of these parties and they agreed that the written contract should contain . . . a provision that the initial payment of $1,000.00 be made 6 months after delivery of possession to plaintiffs, and possession to be delivered plaintiffs immediately after removal of defendant from said premises and not more than

60 days from and after date of the contract. . . . That by mistake time of payment of said $1,000.00 . . . was made to read 6 months after date of contract whereas it should read 6 months after plaintiffs had possession of said premises; which errors were unknown to plaintiffs or either of them when the contract was signed; that defendant did on June 24, 1950, inform plaintiffs of said error as to time of payment and did offer to agree to correction thereof on condition plaintiffs would increase said monthly payments to $100.00 and make said payments begin as of date of delivery of possession to plaintiffs.'' These allegations were denied.

The court found that the "written contract correctly expressed the intentions of the parties" and that it "failed to mention when plaintiffs were to receive possession of said premises and that defendant had at all times and now has possession of the same. *That it was the intention of said defendant at all times that plaintiffs were not to have possession of said premises until plaintiffs had made said initial payment of $1,000.00*; that defendant has never agreed to give possession of said real property until said sum of $1,000.00 should be paid.'' (Emphasis added.)

As said in *Moore* v. *Vandermast, Inc.*, 19 Cal.2d 94, 96 [119 P.2d 129]; "Although plaintiff's contentions upon this appeal are stated in various ways, the basic point upon which he relies is that the evidence is insufficient to support the findings of the trial court." The opinion then goes on to state the rule governing such cases, as follows: "In this connection it should be noted that where one seeks to reform a written instrument by the introduction of extrinsic evidence, the courts have generally required clear and convincing proof, or something more than a preponderance of the evidence, as the basis for such an invasion of the parol evidence rule. [Citations.]'' Whether the evidence is clear and convincing is for the trial court to determine, not an appellate court. (*Ward* v. *Waterman*, 85 Cal. 488, 503 [24 P. 930]; *Speer* v. *Kittle Mfg. Co.*, 117 Cal.App. 717, 719 [4 P.2d 575]; *Alvarez* v. *Ritter*, 67 Cal.App.2d 574, 578 [155 P.2d 83].)

Section 3399, Civil Code reads: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, . . .''

The building on the property is very old. The second floor was occupied by the owner, respondent Lupe Sanchez Hernandez, and her son, Ernest Sanchez. The lower floor was unoccupied and in an uncompleted condition, and before it was boarded up was somewhat exposed to the elements since it appears that trespassers could and did enter it in the nighttime. It had been in that condition for about two years and Ernest testified that he had paid out about $1,600 toward the downstairs work which had never been completed.

Respondent was content to continue living upstairs, but Ernest was anxious to move the family to other quarters, and had taken steps to find them. Appellant James Wilson, who is a cement mason, in passing the place one day engaged in conversation with Ernest and was told by him that the place was for sale. Appellant was shown through, with the result that negotiations were carried on by Ernest, without any authority from his mother, for the sale of the property to appellants for $6,500.

Respondent does not read or write English, and speaks it so poorly that a Spanish interpreter had to be called in when she testified. Appellant James Wilson neither reads nor writes, but his wife does. Ernest's schooling did not go beyond the 9th grade. And so it appears at the outset, in this case where the evidence has to be clear and convincing, that neither of the two principal contracting parties can read or write the language in which the contract was drawn. It appears, further, that the respondent took no part in the negotiations but finally "gave in" and signed her name to the contract of sale negotiated by her son. While it is true that appellant James Wilson cannot read or write, the contract was drawn up by his regular attorney, who has practiced for many years and represents appellants in this litigation. Respondent had no attorney.

It would appear that appellants' theory was and is that respondent (who unquestionably became bound by her son's acts and conduct, by ratification) was to sell the place "as is" and that appellant Wilson was to do the work necessary to make the lower floor habitable so that when repaired and rebuilt, it would make a home for appellants and probably provide another apartment which they could rent. During the trial appellants' counsel said: "what we are interested in is getting possession so that we can go in there and finish

the property and put it in habitable condition." However this may be, there is not a word in the contract as drawn which expresses any such idea and it is conceded by appellants that it is entirely silent as to when possession was to be given. It contains no provision binding appellants to do anything in the way of repairs or rehabilitation of the property. Respondent and her son both testified that appellants were not to have possession until the money was paid.

Appellants' attorney, when questioned as to why he did not write into the contract the provisions which he now seeks by reformation to have written therein testified:

"Q. Now, Mr. Hart, isn't that contract, the way you have described it, exactly the way you were asked to draw it? A. It is and it isn't. Q. Will you answer yes or no and explain? A. Upon the assumption he was to be given immediate possession, as we understood at the time, or, he said, 'Most any day; possibly one week; twelve days; not more than sixty days.' Q. Answer the question yes or no. Is that contract the way you were instructed to draw it? A. The contract—so far as possession is concerned; it is the way it was intended to be drawn excepting there is one condition in there in reference to possession; possession and the $1,-000.00, in my mind, were tied up together.

"Q. Just answer the question yes or no and then if you want to, explain; explain, but I think I am entitled to a yes or no answer . . . I don't want to be unfair, but I would like to have the question answered that way. A. Yes and no. It was on the theory that possession be given immediately; no, if possession was not to be given immediately. That is the way I would answer that. Q. Why was it you didn't put in anything about possession in the contract? A. Because there was a doubt as to the date on which—or, at the time on which the possession was to be given, so I just left it out . . . I drew up the contract I thought they wanted, and I just told them to sign it."

In the Vandermast case, *supra,* both parties to the lease were represented by lawyers, while here only one party was so represented *but that party is the one seeking the reformation based on unilateral mistake* (see *Miller* v. *Lantz,* 9 Cal.2d 544, 548 [71 P.2d 585]). ▪ In the Vandermast case the court says (p. 98): "In the absence of clear and convincing evidence to the contrary a written instrument is presumed to express the true intent of the parties [citations]. *This is particularly true where, as here, the instrument was drafted*

*by an attorney representing the party seeking to alter the terms of the written instrument."* (Emphasis added.)

The court's finding that the "written contract correctly expressed the intentions of the parties" is unquestionably supported by the evidence.

While appellants' counsel admits that the contract is silent as to possession, he argues that this was an executory contract (which it is) and that since the appellants were to make their home on the property and to pay for it in small monthly installments, there is an implication that they were entitled to immediate possession (citing *Turney* v. *Collins*, 48 Cal. App.2d 381, 390 [119 P.2d 954], and other cases dealing with executory contracts). This argument is consistent with appellants' theory as we have already set it forth. But turning from theory to the contract itself, nothing is to be found therein about appellants' intention to make it their home. It is as silent on that subject as it is on the subject of repairs, improvements and rebuilding which under appellants' theory were supposed to be done by appellants.

The rule with respect to possession is stated in 25 California Jurisprudence, page 692, section 171, as follows: "Upon a sale of real property the right to possession follows the legal title unless it appears that the parties intended such right to be determined by the contract of purchase. Accordingly in the absence of agreement to the contrary a vendor is entitled to retain possession until the legal title passes to the purchaser." And section 172 (25 Cal.Jur., p. 693) reads: "As a general rule a vendor retains the right to possess the property sold so long as the contract remains executory. The purchaser is not entitled to possession, pending performance, unless such right is expressed in, or may be inferred or implied from the contract, or unless a right of possession appears from surrounding circumstances."

The case appellants cite, *Turney* v. *Collins*, indeed recognizes this rule in the following passage: "In this state the rule is well-established that in determining where the right of possession rests the courts will not be guided alone by the abstract principle that possession follows the legal title. *If the executory contract of sale contains no express or implied provision relative to the right of possession the abstract principle will be followed."* (Emphasis added.) The language just emphasized as applied to this case means that the right of possession follows the legal title which in this instance remained in respondent. This is so since the court distinctly found "That

it was the intention of said defendant at all times that plaintiffs were not to have possession of said premises until plaintiffs had made said initial payment of $1,000.00.'' In the face of such finding there is no ground on which it can be claimed that the contract of sale contains any ''implied provision relative to the right of possession.''

With respect to appellants' prayer for specific performance, it is self-evident that the court could not very well make a decree requiring that appellants be admitted to possession while at the same time it denied reformation because the payment of the $1,000 was a condition precedent to the right of possession. Moreover, appellants have never attempted to even tender the $1,000, and they do not allege performance on their part (Civ. Code, § 3392). In this connection the court found:

''That plaintiffs have not at any time offered to pay said sum of $1,000.00 to said defendant and did not offer at the time of trial to pay said sum of money and have not paid the same or any part thereof; that more than six months have passed since the date of said contract and that said contract provides that time is of the essence;'' and concluded: ''That plaintiffs have not done or offered to do equity and are not entitled to specific performance of said contract to convey realty and are not entitled to recover damages from said defendant.''

With respect to appellants' prayer for declaratory relief: respondent filed a cross-complaint alleging that appellants asserted an interest in the property but that their claim was without right and praying that they be enjoined and debarred from asserting any right, title or interest therein. The answer thereto set up appellants' claim for reformation and specific performance. The court found against appellants on these issues and made conclusions of law: ''That the failure of plaintiffs to pay the sum of $1,000.00 to defendant within a period of six months from the date of said contract constitutes a breach of said contract on the part of plaintiffs and relieved said defendant from all further liability under the terms of said contract to perform said contract or convey said real property or to place a deed to plaintiffs in escrow and terminated all rights of plaintiffs under said contract.''

The judgment decrees that ''plaintiffs have no right, title or interest'' in or to the property, which is a sufficient declaration of the rights of the parties.

With respect to appellants' prayer for possession and for

damages for withholding possession, the conclusions that appellants were entitled to neither reformation nor specific performance, remove from the case all questions of right to possession and damages for withholding.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.