C. WILLIAM CLIPFEL *v.* LOUISE A. KANTROWITZ

INGLIS, C. J., BALDWIN, O'SULLIVAN and DALY, JS.[1]

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued December 8, 1955—decided January 27, 1956

*William J. Galvin, Jr.,* for the appellant (defendant).

*William M. Pomerantz,* with whom, on the brief, was *Dorothy E. Kelmenson,* for the appellee (plaintiff).

O'Sullivan, J. The plaintiff brought this action to obtain (1) reformation of a written contract, (2) specific performance of the contract as reformed, and (3) damages. The court decided that reformation was unnecessary and rendered judgment for the plaintiff to recover damages on the ground that the contract as written had been broken. The defendant has appealed.

We are confronted at the outset by assignments of error directed at the finding. When, as here, a party claims that the court has found facts without evidence, he may state that claim in his brief and either print no evidence or print all that is relevant. Practice Book § 447. If he adopts the first alternative or if, in pursuing the second, he fails, wittingly or otherwise, to include in his appendix all of the evidence that is relevant, the opposing party must print, in narrative form whenever possible, the evi-

dence which supports the challenged facts, if those facts are to stand. In the case at bar, the defendant has attacked many of the subordinate facts in the finding. The narrative incorporated in her appendix indicates an absence of evidential support for those facts, and the portions of the transcript printed by the plaintiff in his appendix do little, if anything, toward remedying the deficiency. Error, then, could readily rest on the failure of the finding, as it would appear when corrected, to sustain the court's conclusion as to the defendant's liability. We need not, however, dispose of the appeal on that ground. For the purpose of the case, we will assume that there was ample evidence to justify a finding of all of the challenged facts.

The facts need not be stated in detail. It will be ample to say that they disclose the following situation: In 1948, a closed corporation known as the Associated Film Libraries, Inc., became indebted to the plaintiff in the amount of $17,750. The defendant was then a stockholder of the corporation, and her husband was its managing director. During July, 1948, the plaintiff was given 147 shares of the capital stock, representing $14,700 of the debt to him, and the balance of $3050 was carried on the corporate books as an open account. A few months later and for reasons requiring no present discussion, the parties executed the written instrument quoted below.[2] By virtue of its terms, the plaintiff

[2]                    "AGREEMENT

THIS AGREEMENT, made this 10th day of November, 1948, by and between C. WILLIAM CLIPFEL of the Town of West Hartford, County of Hartford, and State of Connecticut, of the first part, hereinafter referred to as the SELLER, and LOUISE KANTROWITZ of the Town of New Britain, County of Hartford, State of Connecticut, of the second part, hereinafter referred to as the PURCHASER, WITNESSETH:

1. The said Seller agrees to sell to the said Buyer the following

agreed to sell to the defendant the 147 shares of stock he had received the previous July and the open account of $3050 he had against the corporation. It is this instrument which the plaintiff sought to have reformed, his claim being that either because of mutual mistake or because of his own mistake in conjunction with fraudulent conduct on the defend-

described property upon the following terms, to wit: Certificate #30 of fifty-two (52) shares of stock of the Associated Film Libraries, Incorporated, Certificate #28 of fifty-two (52) shares of stock of the Associated Film Libraries, Incorporated, Certificate #27 of forty-three (43) shares of stock of the Associated Film Libraries, Incorporated, and an account in the amount of $3050.00 against the Associated Film Libraries, Incorporated, resulting from a loan from the said Seller to the said Associated Film Libraries, Incorporated; for the total sum of $17,750 to be paid in the manner following: $570.00 on the 15th day of November, 1948, and the like sum of $570.00 each and every month thereafter for a term of twenty-eight (28) months, and a final payment of $1220.00 on the twenty-ninth (29) month when said full amount of $17,750.00 shall have been paid in full.

2. The payments shall first be applied towards the $3050.00 account. After said account has been paid in full, any and all payments shall be applied towards the purchase of the said aforementioned certificates of stock.

3. The Seller agrees that said certificates of stock plus an assignment of said account against the Associated Film Libraries, Incorporated, will be placed in escrow with Charles S. House, Attorney at Law, 750 Main Street, Hartford, Connecticut, but the Seller reserves full voting rights to the said shares of stock until transfer to the Buyer has been made in accordance with the provisions of this agreement. Each of the parties hereto expressly agrees that the said Charles S. House, Escrow Agent, shall be relieved from all liability whatsoever except for any positive act of negligence on his part.

4. Upon the payment of the $3050.00, the said Seller agrees to assign said account against the Associated Film Libraries, Incorporated, in full to the said Purchaser. However, in the event there shall be a default by the said Purchaser on the said payments towards the purchase of said account, then in that event said Seller agrees to assign to the said Buyer so much of the account as has been paid for by the Buyer prior to said default.

5. After the purchase of said account, the Seller agrees to transfer to the Purchaser two-thirds (2/3) of the amount of the stock paid for after each and every payment thereon, said one-third (1/3)

ant's part, the instrument failed, contrary to the real understanding of the parties, to include words making it obligatory on the defendant to purchase what he, the plaintiff, was agreeing to sell.

Ordinarily, a court of equity which has obtained jurisdiction of a controversy will retain jurisdiction for the purpose of administering complete relief in furtherance of justice concerning the subject matter. *Beach* v. *Beach Hotel Corporation,* 117 Conn. 445, 452, 168 A. 785; *Alden* v. *Trubee,* 44 Conn. 455, 460. This is in conformity with the general rule of equity jurisprudence that the court will grant all the incidental relief that is necessary to carry out the main objective involved in the suit. *Maruca* v. *Phillips,* 139 Conn. 79, 82, 90 A.2d 159. This principle, undoubtedly correct in cases where it has proper application, has none here.

The Practice Act did not destroy the distinctions between law and equity. *Wolfe* v. *Wallingford Bank & Trust Co.,* 122 Conn. 507, 512, 191 A. 88. "The substitution of our Practice Act for the common-law system of pleading has not changed the situation save as it has abolished certain formal distinctions and employed a new nomenclature. The same facts will entitle one to the same redress as before, and to no other redress." *Avery* v. *Spicer,* 90 Conn. 576, 581, 98 A. 135; *Aetna Life Ins. Co.* v. *Richmond,* 107 Conn. 117, 121, 139 A. 702; *Veits* v.

---

being held as liquidated damages in the event of non-performance of this contract by the said Purchaser.

IN WITNESS WHEREOF, We have hereunto set our hands and seals this 10th day of November, 1948.

| In the presence of: | /s/ C. William Clipfel |
| /s/ Charles S. House | C. William Clipfel |
| /s/ Maurice Poch | /s/ Louise Kantrowitz |
| | Louise Kantrowitz" |

*Hartford,* 134 Conn. 428, 432, 58 A.2d 389. It remains true, then, that where the asserted essential right is equitable in nature and damages are sought in lieu of equitable relief or as complementary or supplemental to it in order to make the relief complete, the whole action still remains one in equity. *Savings Bank* v. *Santaniello,* 130 Conn. 206, 210, 33 A.2d 126; *Berry* v. *Hartford National Bank & Trust Co.,* 125 Conn. 615, 619, 7 A.2d 847; see *National Bank of Commerce* v. *Howland,* 128 Conn. 307, 310, 22 A.2d 773.

The rule that equity, having once become possessed of a cause, will retain it for the purpose of administering legal relief does not apply in many jurisdictions when the facts relied on to support the equity jurisdiction are incapable of proof. *Clark* v. *Wooster,* 119 U.S. 322, 325, 7 S. Ct. 217, 30 L. Ed. 392; *Wilson* v. *Sanchez,* 116 Cal. App. 2d 670, 676, 254 P.2d 594; *Gamage* v. *Harris,* 79 Me. 531, 536, 11 A. 422; *Greene* v. *Smith,* 160 N.Y. 533, 541, 55 N.E. 210; *Kerlin* v. *Knipp,* 207 Pa. 649, 652, 57 A. 34; *Wyoming Coal Sales Co.* v. *Smith-Pocahontas Coal Co.,* 105 W. Va. 610, 620, 144 S.E. 410; 1 Pomeroy, Equity Jurisprudence (5th Ed.) § 237d; 19 Am. Jur. 132, § 132; 30 C.J.S. 427, § 73. This is especially sound where, through his adversary's appeal to a court of equity, a party has thereby been deprived of his constitutional right to a trial by jury of issues at law. *Reynolds* v. *Warner,* 128 Neb. 304, 310, 258 N.W. 462; *Green* v. *Stewart,* 19 App. Div. 201, 203, 45 N.Y.S. 982; 1 Pomeroy, op. cit., § 358a.

There may be some doubt whether Connecticut is in complete accord with all of the holdings in the foregoing authorities. See *Downes* v. *Bristol,* 41 Conn. 274, 277; *McMahon* v. *Plumb,* 90 Conn. 281,

285, 96 A. 958. The former was an action seeking the rescission of a contract, and the latter asked for specific performance of an agreement to sell realty. In each damages were considered permissible although equitable relief was denied. We have, however, no reported case that has come to our attention where the court ordered damages for breach of a contract which the plaintiff unsuccessfully sought to have reformed.

Whatever might be the result under other circumstances, the situation in the case at bar was such as to preclude an award of damages. The complaint was drafted to obtain the equitable relief to which the plaintiff insisted he was entitled. He did not allege, as he might have done, a cause of action at law to recover for a breach of the contract as written. He asked to have the instrument reformed to express the real intent of the parties by adding the words "and the Buyer agrees to buy from the Seller" after the word "Buyer" in the first line of paragraph 1. To be sure, he also asked for damages, but it is perfectly obvious that he expected to receive them only after reformation had been ordered. It was on this theory that the action was brought, the complaint was framed and the case was presented. Indeed, in a colloquy had with the court during the early stages of the trial, counsel for the plaintiff expressly conceded that his client was entitled to no damages unless he was successful in obtaining reformation. Under the circumstances, the court was incorrect in awarding damages on a cause of action which was neither alleged in the complaint nor orally claimed at trial.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.