[Civ. No. 19545.   First Dist., Div. Three.   Dec. 7, 1961.]

ROY EDWIN RAMSEIER, Plaintiff and Appellant, v. OAKLEY SANITARY DISTRICT, Defendant and Respondent.

Spurgeon Avakian, Jerry Phelan and Avakian & Johnston for Plaintiff and Appellant.

Carlson, Collins, Gordon & Bold, Steven H. Welch, Jr., John A. Nejedly, District Attorney, and Charles L. Hemmings, Deputy District Attorney, for Defendant and Respondent.

DRAPER, P. J.—Plaintiff brought this action to recover $18,174 for engineering services rendered to defendant sanitary district under a written contract. The trial court ordered the contract reformed as prayed by the district's cross-complaint. As reformed, the contract entitled plaintiff to but $1,500. He appeals.

In the fall of 1955, the district board considered expansion and improvement of its storm and sanitary sewer system, and determined to seek engineering advice. At the board's request, plaintiff attended its meeting of December 2, 1955, and submitted a proposed form of contract between the district and himself. This contract provided that plaintiff would prepare a preliminary report and, if it were approved by the board, would draw final plans and specifications, supervise the taking of bids and furnish general direction of the construction work. He was to receive 2 per cent of the estimated total cost on submission of the complete preliminary report, but with the proviso that this payment would not exceed $1,500. Upon delivery of final plans and specifications, he was to be paid "a sum sufficient to make the payments," including that just described, "equal to . . . (4½%) of the contract cost as estimated . . . ." Upon completion of the construction work, he was to be paid a sum sufficient to make his total fee 6 per cent of the total cost of the work completed.

The witnesses are in agreement that the board objected to only two substantive provisions of the contract proposed by plaintiff at the December meeting. These were (1) that all

plans and specifications would remain the property of plaintiff engineer and (2) that the district would pay, over and above the agreed fee, for surveying work required for the project. As to the latter feature, plaintiff told the board that he thought surveying costs would be small, because of the availability of existing surveys. However, he felt that if he were to assume the risk of providing necessary surveys, his total fee should be increased to 7½ per cent of the project cost. This was agreed to, and plaintiff consented that the two provisions excepted to by the board members could be eliminated.

The board then asked its attorney to compare the agreement with one previously entered into by another political entity and to conform the final agreement thereto. Defendant's witnesses testified that such alteration was to be as to form only, and not as to substance. Plaintiff testified to the contrary, asserting that an agreement new in substance as well as form was to be drawn.

Defendant's attorney then prepared an agreement, deleting the two provisions excepted to by the board and providing for a total fee of 7½ per cent to plaintiff if the work were completed. This draft is quite different in form from that submitted by plaintiff in December, but is the same in substance, except for the changes just mentioned and except for the paragraph specifying the proportions of plaintiff's fee to be paid at each of the three stages of the work. Defendant's attorney stated that he left this provision blank in the draft, forwarded it to plaintiff, and that plaintiff filled in the blanks and the attorney copied these insertions in the final agreement form. Plaintiff, on the contrary, testified that the attorney forwarded to him a completed form which he signed and presented to the board for execution.

In any event, the agreement was signed by plaintiff, who attended a meeting of the board on February 3, 1956, at which time the district also executed the agreement. It provides for payment of plaintiff's fee (7½%) as follows: "(a) upon the completion of the preliminary report, twenty-five percent (25%) of the total fee to be based upon a reasonable estimate of the cost of the work"; (b) upon completion of final plans and specifications, (50%) of the total fee; (c) upon final completion of construction, "the remaining balance of said total fee."

The preliminary report indicated total cost in excess of $900,000. The trial court found that the recommendations of this report "were not reasonably necessary or advisable con-

sidering the circumstances of the defendant.'' The district has proceeded no further, and it is conceded that plaintiff is now entitled only to the fee to be paid upon completion of the preliminary report.

The trial court found that at the December discussion of the first draft the parties had orally agreed upon a maximum cost of $1,500 for the preliminary report, that plaintiff was fully aware of the oral understanding, knew that it was not included in the final agreement, and had reason to suspect that failure to include it was due to mistake. It further found that the reasonable value of plaintiff's services in preparation of the preliminary report was $1,500. Reformation of the agreement of February 3, so as to state that payment for the preliminary report should not exceed $1,500, was ordered. Defendant having paid the $1,500, judgment was ordered in its favor.

''When, through . . . a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention . . .'' (Civ. Code, § 3399).

In reforming a contract the courts, of course, do not write a new agreement for the parties. Rather, they enforce the actual agreement, which through fraud, mutual mistake, or mistake of the type described in the above-quoted portion of the code section, has not been stated in the written expression of the contract. (*Lemoge Electric* v. *County of San Mateo*, 46 Cal.2d 659 [297 P.2d 638] ; *Bailard* v. *Marden*, 36 Cal. 2d 703 [227 P.2d 10].) It does not follow, however, as plaintiff seems to argue, that all elements of the agreement should have been reached simultaneously. It is apparent that the trial court found the parties to have agreed upon the $1,500 limitation at the December meeting. There is no dispute that they agreed upon the total fee of 7½ per cent at the same time. While the dates and proportions of payments of the fee were left for determination after that meeting, agreement thereon was in fact reached. The board members clearly were not concerned with the proportions of the total fee to be included in the second and third payments. Those payments were not to be made unless construction was actually undertaken, and must be within the total fee of 7½ per cent. Thus the district implicitly accepted the written contract figures for those two payments, and they have never been disputed. It follows that all terms of the contract were agreed

upon by the time of execution of the agreement. The evidence is readily susceptible of the view, obviously taken by the trial court, that the payment to be made upon submission of the preliminary report would not exceed $1,500 and that this agreement was not intended to be altered by the deferment of agreement upon the other terms.

It should be noted that limitation of the first payment is not inconsistent with increase of the total fee. The written agreement clearly provides that "the remaining balance" of the total fee of 7½ per cent, after the first two payments have been made, is to be due upon completion of construction. There is nothing improbable in the conclusion that plaintiff was willing to accept a limited initial payment and look to the prospect of completion for his major compensation. The evidence thus supports the finding that the parties, at the two board meetings, reached a full and definite agreement which is expressed in the written contract as reformed by the judgment. The fact situation here is closely analogous to one in which a like judgment was upheld (*Eagle Indem. Co.* v. *Industrial Acc. Com.*, 92 Cal.App.2d 222 [206 P.2d 877]).

Although the evidence to warrant reformation must be "clear and convincing" (*Moore* v. *Vandermast, Inc.*, 19 Cal.2d 94, 98 [119 P.2d 129]), it has been held that the question whether the evidence meets this test is for the trial court to determine (*California Packing Corp.* v. *Larsen,* 187 Cal. 610, 613 [203 P. 102] ; *Wilson* v. *Sanchez,* 116 Cal.App. 2d 670, 672 [254 P.2d 594]). Here the only possible element of uncertainty is to be found in a degree of contradiction in a portion of the testimony of but one member of defendant's board. This conflict was for resolution by the trial court (*O'Banion* v. *Borba,* 32 Cal.2d 145, 152-153 [195 P.2d 10] ; *Rice* v. *California Lutheran Hospital,* 27 Cal.2d 296, 301 [163 P.2d 860]). It found for defendant. The mere fact that plaintiff contradicted portions of defendant's clear evidence obviously does not bar findings in defendant's favor where defendant's evidence would meet the test if uncontradicted. (*Ward* v. *Waterman,* 85 Cal. 488, 504 [24 P. 930].)

Finally, plaintiff contends that the failure of the members of defendant's board to read the final agreement in full, and to detect the absence of the $1,500 limitation, constitutes negligence which bars reformation. Some broad language lends apparent support to this view (*Roller* v. *California Pacific Title Ins. Co.*, 92 Cal.App.2d 149, 153-155 [206 P.2d 694] and cases there cited). But where one party's mistake is

known to or suspected by the other, as the court found to be the case here, negligence in failing to read the instrument does not bar reformation (*Baines* v. *Zuieback*, 84 Cal.App.2d 483, 491 [191 P.2d 67] ; and see Rest., Contracts, § 508).

Judgment affirmed.

Salsman, J., and Devine, J., concurred.