LAKEVIEW ASSOCIATES *v.* WOODLAKE MASTER
CONDOMINIUM ASSOCIATION, INC.
(15458)
(15460)

Callahan, C. J., and Norcott, Katz, Palmer and Peters, Js.

Argued November 6, 1996—officially released January 21, 1997

*William R. Breetz,* with whom was *Brendan T. Flynn,* for the appellant in Docket No. 15458, appellee-appellant in Docket No. 15460 (defendant).

*Robert E. Wright,* for the appellee in Docket No. 15458, appellant-appellee in Docket No. 15460 (plaintiff).

PALMER, J. This case requires us to decide whether the trial court properly concluded that the defendant, Woodlake Master Condominium Association, Inc., must pay for repairs to a private road in Woodbury owned by the plaintiff, Lakeview Associates, under the terms of a conveyance that granted to the defendant an easement over the road. The defendant has appealed from the judgment of the trial court directing it to pay the plaintiff a sum not to exceed $298,400 for repairs to the road. The plaintiff has appealed from the judgment of the trial court awarding it offer of judgment interest under General Statutes (Rev. to 1993) § 52-192a,[1] claiming that

---

[1] General Statutes (Rev. to 1993) § 52-192a provides: "Offer of judgment by plaintiff. Acceptance by defendant. Computation of interest. (a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment', the defendant or his attorney may

the trial court failed to award such interest retroactive to the date of the complaint. The defendant has cross appealed, claiming that the plaintiff is not entitled to any prejudgment interest under § 52-192a.[2] We conclude that the trial court properly required the defendant to pay for the repairs to the private road, but that the plaintiff is not entitled to any offer of judgment interest under § 52-192a.

The following facts are undisputed. The plaintiff is a general partnership that owns seventy-nine acres of undeveloped property in Woodbury and Southbury. Approximately sixty-three acres of that property are located in Woodbury and border on a private road known as Woodlake Road. The defendant is a condo-

file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

[2] The parties appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

minium association, comprised of 400 units and approximately 1100 residents, whose property abuts the plaintiff's property along Woodlake Road.[3] Woodlake Road, which is 6400 feet long, provides the only means of ingress and egress to the parties' properties.

Originally, both properties were owned by Joseph R. Pepe. In January, 1972, Pepe conveyed what is now the defendant's property to Woodbury Village, Inc. (Woodbury Village), a joint venture that developed the defendant's condominium complex and that eventually transferred control of the complex to the defendant. Pepe retained ownership of Woodlake Road for himself and his beneficiaries, but granted an easement over the roadway to Woodbury Village and its heirs, successors and assigns.[4] In October, 1972, Pepe recorded a modified easement that provided in relevant part: "The above granted easement shall continue in full force and effect unless and until the herein described premises shall be dedicated as a public highway and accepted by the Town of Woodbury, at which time this easement shall cease and be of no further force and effect. Provided, however, that by the acceptance hereof, Woodbury Village, Incorporated, its successors and assigns covenant and agree that they will contribute, pro rata to maintain and keep in good repair the road described herein until acceptance thereof by such Town of Woodbury."[5]

[3] The defendant's property also abuts the balance of the plaintiff's property, which is located in Southbury.

[4] The deed provided that the transfer of the property was made "[t]ogether with and to be used in common with all others to whom such right may hereafter be granted by the grantor, his heirs, successors and assigns, the right to use the fifty (50) foot roadway adjacent to the said premises on the easterly and westerly side thereof extending from Transylvania Road to and through said premises for all lawful purposes including access and egress to and from said premises by motor vehicle and otherwise and for the installation and maintenance therein of utility lines, storm and sanitary sewers."

[5] Unless otherwise indicated, all references hereinafter to the easement are to the modified easement recorded in October, 1972.

The plaintiff purchased the balance of Pepe's property in 1988. Because Pepe had retained ownership of Woodlake Road for himself and his beneficiaries, the plaintiff, as Pepe's successor in title, now owns the road. The defendant has always repaired and maintained the road without any contribution from the plaintiff.[6]

In 1990, the plaintiff requested that the town of Woodbury accept Woodlake Road as a public highway.[7] In response to the plaintiff's request, the town commissioned a study of Woodlake Road, which stated that the road was generally in poor condition and in need of repair. Upon learning of the results of the study, the plaintiff demanded that the defendant make the necessary repairs or that it otherwise assist the plaintiff in having the road accepted as a public highway by the town.[8] When the defendant failed to cooperate, the plaintiff instituted this action seeking injunctive relief and damages.[9] On July 16, 1993, the plaintiff filed an

---

[6] Because the plaintiff's property remains undeveloped, Woodlake Road has been used almost exclusively by condominium residents and their guests.

[7] Under local zoning regulations, the plaintiff cannot subdivide its property unless that property is accessible by public road.

[8] Prior to the town's study of Woodlake Road, children who resided in the condominium complex were transported to and from school over that road by the bus company hired by the town. See General Statutes § 10-220c (municipality may transport public school children over private road if road owner agrees and road meets municipality's specifications). The bus company ceased all travel on Woodlake Road, however, after the plaintiff complained that the town's study had indicated that the road did not meet town standards. The buses resumed their travel on Woodlake Road after the defendant and the bus company entered into an agreement pursuant to which the defendant itself hired the company to transport the condominiums' schoolchildren and agreed to hold the company harmless for any claims arising from the buses' use of Woodlake Road.

[9] The complaint is in two counts. The first count alleges that the plaintiff has been irreparably harmed by the defendant's failure to maintain Woodlake Road properly because: "(a) Woodlake Road and the abutting woodland are worth less than they otherwise would be; (b) [t]he risk of injury to all who travel Woodlake Road has been increased; and (c) [the plaintiff's] potential liability for such injuries has been increased." The second count alleges that the defendant and its members have forfeited their right to use Woodlake

offer of judgment under § 52-192a in the amount of $175,000. The defendant failed to accept the plaintiff's offer of judgment, and the case proceeded to a court trial.

At the conclusion of the trial, the court determined that, under the terms of the easement, "the plaintiff and [the] defendant are responsible for their pro rata share of all repair and maintenance expenses [required for the upkeep of] Woodlake Road. . . . [T]he pro rata share of each is determined by the number of dwelling units legally using said road. Since there are no such units on the plaintiff's property using said road, and there are 400 condominium units of the defendant using the road, then those 400 condominium units are responsible pro rata for any expense in [the] maintaining, repairing and upkeep of said road. By this the court means that [the] number of units on each property should be added together and each unit is responsible for one share of the total aforesaid expenses relative to the road. . . . Since there are no units on the plaintiff's parcel of land, all maintenance and repairs required for Woodlake Road are the responsibility of the defendant . . . ."

The trial court, construing the terms "repair" and "maintain" according to their ordinary meaning,[10] further concluded that the plaintiff had established by "overwhelming" evidence that Woodlake Road "has deteriorated to a point where it needs more than a maintenance program" and that it "is in serious need

Road and, consequently, that their continued use of the road constitutes a trespass. The complaint seeks either an injunction requiring the defendant "to maintain Woodlake Road and keep it in good repair" or an injunction prohibiting the defendant and its members from using the road, and damages.

[10] "The verb 'repair' has been defined to mean 'to restore to a sound or healthy state; to make good.' Webster, Third New International Dictionary. The verb 'maintain' means 'to keep in a state of repair, efficiency or validity; to sustain against opposition or danger.' [Id.]" *John A. Errichetti Associates* v. *Boutin*, 183 Conn. 481, 490, 439 A.2d 416 (1981).

of reconstructive repairs at this time." On the basis of testimony by the plaintiff's two experts regarding the nature and cost of the necessary repairs, the trial court awarded the plaintiff $298,400 and ordered it "to have . . . Woodlake Road repaired . . . within six (6) months of this date or be subject to a penalty which this court can impose for the failure to do so."[11] The court also ordered that "[i]n the unlikely event that the aforesaid repairs cost less than $298,400.00, then any such excess funds shall be repaid to the defendant by the plaintiff."[12] The court also awarded the plaintiff prejudgment interest under § 52-192a in the amount of $76,701.20.[13] Finally, the court stated that the defendant shall remain solely responsible for maintaining the road in good repair until such time, if ever, as the plaintiff's property is developed. Additional facts will be set forth as they become relevant.

[11] The plaintiff's expert witnesses were Jack E. Stephens, a consultant and retired college professor, and William A. Brennan, the secretary-treasurer of a local construction company. Stephens testified that he had inspected Woodlake Road on several occasions between 1991 and 1994 and that, in his opinion, Woodlake Road has not been properly maintained, it is no longer useable as a roadway, and a new road is necessary. Brennan testified that his company had built a portion of Woodlake Road and that he is very familiar with the road. In Brennan's opinion, the damage to Woodlake Road was due largely to the improper maintenance of the road's drainage system. Brennan further testified that Woodlake Road is in need of extensive road repairs and a new drainage system. According to Brennan, there are several different methods that may be employed to repair the road and its drainage system, the least costly of which will require an expenditure of $298,400.

[12] Although the trial court rendered judgment for the plaintiff on count one of the complaint; see footnote 9; the court expressly stated that it had rejected the plaintiff's application for injunctive relief because the plaintiff had not established that it had been irreparably harmed and, further, that the plaintiff had "an adequate remedy at law, namely, money damages . . . ." The trial court rendered judgment for the defendant on count two of the complaint. The plaintiff has not appealed from that portion of the court's judgment.

[13] The trial court also concluded that the offer of judgment interest is to be recomputed in the event that the actual cost of the repairs is less than $298,400.

On appeal, the defendant claims that: (1) the trial court improperly concluded that the defendant is responsible for making the required repairs to Woodlake Road; (2) even if the defendant bears some responsibility for those repairs, the trial court improperly concluded that the plaintiff does not share equally in that responsibility; and (3) the conditions of the easement are unenforceable because they impose a limitation on the defendant's rights under the preexisting easement. The plaintiff has appealed, and the defendant has cross appealed, from the trial court's award of offer of judgment interest under § 52-192a. We conclude that the trial court: (1) properly required the defendant to pay for the repairs to Woodlake Road; and (2) improperly awarded the plaintiff prejudgment interest pursuant to § 52-192a.

I

The defendant first claims that the trial court improperly concluded that the defendant breached a duty to the plaintiff to make repairs to Woodlake Road. Specifically, the defendant argues that its obligation to the plaintiff is limited to maintaining Woodlake Road so as to afford the plaintiff the reasonable use of the road and to prevent injury to the plaintiff's property. The defendant further argues that because the plaintiff did not establish that the defendant's failure to make repairs to Woodlake Road had either impaired the plaintiff's use of the road or caused injury to the plaintiff's property, the trial court improperly ordered the defendant to pay for the road repairs. We disagree.

It is true that "[w]here the instrument is silent, the owner of an easement has a duty to make such repairs as are necessary for the owner of the land to have the reasonable use of his estate"; Center Drive-In Theatre, Inc. v. Derby, 166 Conn. 460, 464, 352 A.2d 304 (1974); and, further, that the "owner of an easement may be

held to have a duty to maintain it where failure to do so would injure the servient estate." Id., 465. The easement in this case, however, is not silent as to the parties' obligations concerning the upkeep of Woodlake Road: the conveyance expressly provides that the parties shall "contribute, pro rata *to maintain and keep in good repair* [Woodlake Road] until acceptance thereof by [the] Town of Woodbury."

"For a determination of the character and extent of an easement created by deed we must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties. *American Brass Co.* v. *Serra*, 104 Conn. 139, 142, 132 A. 565 (1926). The language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent. [Id.]" *Mackin* v. *Mackin*, 186 Conn. 185, 189, 439 A.2d 1086 (1982); see *Lago* v. *Guerrette*, 219 Conn. 262, 267–68, 592 A.2d 939 (1991). Because the parties adduced no evidence to suggest that the terms "repair" and "maintain" were intended to have any special or unusual connotation, the trial court properly construed those words according to their ordinary meaning.

Furthermore, the trial court personally inspected Woodlake Road and heard testimony from the plaintiff's experts regarding the extensive work necessary to bring Woodlake Road into a reasonable state of repair.[14] The evidence also indicated that Woodlake Road is a busy thoroughfare used by the defendant's residents as the sole means of access to and from their homes[15] and, in addition, that the road is used by buses that transport

---

[14] The defendant presented no expert testimony regarding the condition of Woodlake Road.

[15] The evidence also established that the residents of the condominium complex comprise approximately 10 percent of all of the residents of the town of Woodbury.

children who reside in the condominium complex to and from school. The question of whether Woodlake Road is in need of repair and, if so, the nature and extent of the repairs necessary to restore the road to a satisfactory condition, raised factual issues to be resolved by the trial court. See *Saphir* v. *Neustadt*, 177 Conn. 191, 198, 413 A.2d 843 (1979); see also *Kuras* v. *Kope*, 205 Conn. 332, 347–48, 533 A.2d 1202 (1987). Accordingly, the trial court's conclusion "must stand unless it is legally or logically inconsistent with the facts found or unless it involves the application of some erroneous rule of law material to the case. *Belford* v. *New Haven*, 170 Conn. 46, 55, 364 A.2d 194 (1975). Only in the clearest circumstances where the conclusion found could not reasonably be reached will the trier's determination be disturbed." *Saphir* v. *Neustadt*, supra, 198. Because the evidence supports the trial court's determination that Woodlake Road is in substantial disrepair and that the reasonable cost of repairing the road is $298,400,[16] the defendant's challenge to the trial court's conclusion in that regard is without merit.

## II

The defendant also claims that the trial court improperly construed the easement as placing upon the defendant the full responsibility for making the repairs to Woodlake Road. We disagree.

The following additional facts are necessary to a resolution of this claim. At trial, the parties disputed the meaning of the provision in the easement requiring

---

[16] Although the defendant claims that the plaintiff failed to establish that the defendant had breached its duty under the easement, the defendant does not contest the trial court's judgment on the ground that the cost of repairing Woodlake Road is, as a matter of law, an improper measure of the award to which the plaintiff is entitled under the *plaintiff's* construction of the easement. See, e.g., *Bachman* v. *Fortuna*, 145 Conn. 191, 194, 141 A.2d 477 (1958) (in action for breach of agreement to repair road, damages may be determined by ascertaining cost of necessary repairs).

Woodbury Village, its successors and assigns "to con-
tribute, pro rata" to the maintenance and repair of
Woodlake Road. The defendant claimed that the ease-
ment unambiguously requires the plaintiff and the
defendant to share equally the cost of maintaining and
repairing the road. The plaintiff, focusing on the fact
that the easement makes express reference only to
Woodbury Village, its successors and assigns, claimed
that the easement unambiguously applies only to the
defendant, as the successor in interest of Woodbury
Village, and not to the plaintiff. In the alternative, the
plaintiff argued that the easement requires the home-
owners on each of the two parcels to pay for the repair
and maintenance of Woodlake Road according to the
number of dwelling units on each property relative to
the total number of units on both properties.

In support of its alternative interpretation of the ease-
ment, the plaintiff, over the defendant's objection, elic-
ited the testimony of Jonathan Bowman, the lawyer
who had drafted the easement on behalf of Woodbury
Village in 1972.[17] Bowman explained that the words
"contribute, pro rata" were intended to ensure that the
cost of maintaining and repairing the road would be
fairly apportioned among those persons actually using
the road, namely, the homeowners on both properties.[18]

---

[17] Earlier in the trial, the court had inquired as to the identity of the
attorney who had prepared the easement and whether that attorney was
available to testify regarding the meaning of the instrument's "pro rata"
language. The court, having been informed that Bowman had drafted the
document and could be made available to testify, indicated that it might
wish to call him as a "court witness." The plaintiff, however, apparently in
response to the court's expression of interest in Bowman's testimony, called
Bowman as its own witness.

[18] We note that the plaintiff entered into a stipulation at trial providing,
inter alia, that "its obligations pursuant to [the easement] are as stated by
Attorney Bowman." Because the plaintiff's property has not been developed,
however, the plaintiff has no greater responsibility to maintain and repair
Woodlake Road under Bowman's interpretation of the easement than it
does under its alternative construction that the repair and maintenance

The trial court accepted Bowman's explanation of the intent of the parties to the instrument and, accordingly, concluded that so long as the plaintiff's property remains undeveloped, the defendant is solely responsible for maintaining Woodlake Road in good repair.

The defendant asserts that the easement unambiguously requires each of the parties to pay for one half of the cost of repairing and maintaining Woodlake Road and, therefore, that the trial court improperly permitted the plaintiff to elicit Bowman's testimony regarding the easement's meaning. We are not persuaded.

The principles governing the construction of instruments of conveyance are well established. "In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances. . . ." (Citations omitted; internal quotation marks omitted.) *Hare* v. *McClellan*, 234 Conn. 581, 593–94, 662 A.2d 1242 (1995). Thus, if the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose

obligations under the instrument apply only to Woodbury Village, its successors and assigns.

of clarifying the ambiguity. Id., 594–97. Finally, our review of the trial court's construction of the instrument is plenary. Id., 594; *Carbone* v. *Vigliotti*, 222 Conn. 216, 222, 610 A.2d 565 (1992).

With these principles in mind, we turn to the defendant's claim that the trial court misconstrued the terms of the easement. As the trial court noted, the adverb "pro rata" means "proportionately according to some exactly calculable factor (as share, liability, period of time): in proportion." Webster's Third New International Dictionary. Thus, it is plain that the original parties to the easement intended that Woodbury Village and its successors in interest shall contribute proportionately to the repair and maintenance of Woodlake Road. The instrument, however, contains no express indication whether that contribution is to be apportioned *among* Woodbury Village's successors in interest or, rather, in some manner *between* its successors and the owner or owners of the servient estate. Since the easement is facially susceptible of either interpretation, the trial court properly overruled the defendant's objection to Bowman's testimony concerning the intention of the parties. Bowman, who drafted the language in question, testified unequivocally that the parties intended to apportion the cost of repairing and maintaining Woodlake Road equally among the homeowners on each of the two properties, and the defendant introduced no evidence to the contrary. In light of Bowman's uncontradicted testimony, we agree with the trial court's determination with respect to the parties' intended meaning of the term "pro rata," and, accordingly, we reject the defendant's claim that the plaintiff is obligated to contribute to the cost of repairing Woodlake Road.

## III

The defendant next contends that the easement is unenforceable insofar as it requires the defendant to

"contribute, pro rata" to the repair and maintenance of Woodlake Road because that requirement constitutes a condition or limitation on the defendant's preexisting right to use the road[19] secured in the original deed in violation of standard 4.2 of the Connecticut Standards of Title.[20] We decline to consider this claim. The defendant not only failed to raise the claim in the trial court; see Practice Book §§ 4061 and 285A;[21] but the parties also expressly stipulated at trial that "the covenant to 'contribute, pro rata to maintain and keep in good repair the road' as stated in [the easement] is in the chain of title for the condominiums *and binds the Master Association.*" (Emphasis added.) The defendant is therefore foreclosed from raising a contrary claim on appeal.

## IV

Finally, the plaintiff appeals, and the defendant cross appeals, from the judgment of the trial court awarding the plaintiff prejudgment interest under § 52-192a. The

---

[19] See footnote 4.

[20] Standard 4.2 of the Connecticut Bar Association, Connecticut Standards of Title (1980), provides in pertinent part that "[a] grantor who has conveyed by an effective, unambiguous deed cannot by executing a subsequent deed, make a substantial change in the name of the grantee, decrease the size of the premises or the extent of the estate granted, impose a condition or limitation upon the interest granted, or otherwise deviate from the first deed, even though the latter deed purports to correct or modify the former." As the Appellate Court has recently noted, however, "[t]he standards of title 'establish the custom in the legal community . . . [but] are not controlling, contractually or otherwise.' *Carter* v. *Girasuolo*, 34 Conn. Sup. 507, 510, 373 A.2d 560 (1976)." *Cardillo* v. *Cardillo*, 27 Conn. App. 208, 212 n.5, 605 A.2d 576 (1992).

[21] Practice Book § 4061 provides in relevant part that an appellate "court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 285A provides in relevant part: "If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim."

plaintiff claims that it is entitled to prejudgment interest retroactive to the filing of the complaint, and the defendant claims that the plaintiff is not entitled to any interest under § 52-192a. We agree with the defendant and, accordingly, we do not reach the issue raised by the plaintiff's appeal.

The following additional facts are relevant to the defendant's claim. The plaintiff filed its original complaint on July 29, 1991. The defendant filed a request to revise the complaint, which was granted over the plaintiff's objection, and the plaintiff filed an amended complaint on January 29, 1992. Thereafter, on July 16, 1993, the plaintiff filed its offer of judgment in the amount of $175,000.

After the trial court had rendered judgment for the plaintiff, the plaintiff sought prejudgment interest under § 52-192a. The plaintiff claimed that it should be awarded such interest from the date of the original complaint because it had submitted a valid offer of judgment within eighteen months of the filing of the amended complaint. The defendant argued that the plaintiff was not entitled to any interest under § 52-192a because "the court's judgment is, in effect, an order to restore Woodlake Road rather than an award of money damages to the [plaintiff]." Although the trial court acknowledged that its judgment was "in the form of an injunction," the court nevertheless concluded that an award of interest was mandated under § 52-192a because the plaintiff had received money damages in excess of its $175,000 offer of judgment.[22] See footnote

[22] "Section 52-192a (b) requires a trial court to award interest to the prevailing plaintiff from the date of the filing of a complaint to the date of judgment whenever: (1) a plaintiff files a valid offer of judgment within eighteen months of the filing of the complaint in a civil complaint for money damages; (2) the defendant rejects the offer of judgment; and (3) the plaintiff ultimately recovers an amount greater than or equal to the offer of judgment." *Loomis Institute* v. *Windsor*, 234 Conn. 169, 180, 661 A.2d 1001 (1995). The purpose of § 52-192a is to encourage pretrial settlements by penalizing a

12. The trial court further concluded that the interest was to be calculated from the date the plaintiff filed its offer of judgment and not, as the plaintiff had claimed, from the date of the original complaint. Accordingly, the trial court awarded the plaintiff $76,701.20 in interest pursuant to § 52-192a. Finally, the trial court stated that if the repairs to Woodlake Road cost less than $298,400, then the defendant shall be entitled to (1) a refund of the difference between the actual cost of the repairs and $298,400, and (2) a refund of the offer of judgment interest on that amount.[23]

We conclude that the plaintiff is not entitled to offer of judgment interest.[24] Although it is true that the trial court's judgment requires the defendant to pay money to the plaintiff, the judgment further requires that the plaintiff shall use that money solely to repair Woodlake Road and, in addition, that it may expend only so much of the $298,400 as will be necessary to make those repairs. Moreover, the trial court ordered the plaintiff to repair the road within six months or be subject to the court's contempt power for failure to comply with its judgment. Thus, as the defendant maintains, the trial court's judgment is in the nature of a mandatory injunc-

party that fails to accept a reasonable offer of settlement in "any civil action based upon contract or seeking the recovery of money damages." See *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 687 A.2d 506 (1997).

[23] The trial court also indicated that because the plaintiff is not entitled to payment from the defendant in excess of $298,400 even if the cost to repair Woodlake Road exceeds that sum, the defendant is not responsible for offer of judgment interest on any amount expended by the plaintiff for road repairs in excess of $298,400.

[24] We do not question, however, the trial court's sensible conclusion that it is preferable, in the circumstances, to place responsibility on the plaintiff for implementing the repairs to Woodlake Road. At trial, the court explained why it had fashioned its judgment in such a manner: "[T]he reason, very frankly, I ordered [the plaintiff] to [repair the road] is because obviously [the parties] can't get along, so if I'm going to have [the defendant] fixing [the plaintiff's] property, [there are] going to be more problems . . . ."

tion directing the defendant to discharge its duty under the easement and not, as the trial court concluded, an award of money damages. See footnote 12.[25] We are aware of no authority, and the plaintiff has provided us with none, to support a claim that § 52-192a applies in circumstances where, as here, the relief granted is not simply the award of a sum certain but, rather, an equitable remedy not available at law.[26] We conclude, therefore, that the trial court improperly awarded the plaintiff prejudgment interest under § 52-192a.

With respect to the defendant's appeal, the judgment is affirmed. With respect to the plaintiff's appeal and the defendant's cross appeal, the judgment is reversed and the case is remanded to the trial court with direction to deny the plaintiff's motion for prejudgment interest pursuant to § 52-192a.

In this opinion the other justices concurred.

---

[25] Although the ad damnum clause of the complaint contained a claim for damages, the primary relief sought by the plaintiff was "[a]n injunction requiring [the defendant] to maintain Woodlake Road and keep it in good repair, or, alternatively, an injunction prohibiting [the defendant] and its members from further use of [Woodlake Road]." See *Clipfel* v. *Kantrowitz*, 143 Conn. 184, 189, 120 A.2d 416 (1956) ("where the asserted essential right is equitable in nature and damages are sought in lieu of equitable relief or as complementary or supplemental to it in order to make the relief complete, the whole action still remains one in equity"). Moreover, the trial court did not award any money damages to the plaintiff on its trespass claim; see footnotes 9 and 12; but, instead, awarded the plaintiff a sum not to exceed $298,400 solely for the purpose of repairing the road. Finally, the plaintiff, in light of the defendant's ongoing duty under the easement to maintain Woodlake Road in good repair, has not challenged any of the equitable conditions placed on its use of the $298,400.

[26] See *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 159, 645 A.2d 505 (1994) (equity is " 'a system of positive jurisprudence founded upon established principles which can be adapted to new circumstances where a court of law is powerless to give relief' "); *Harper* v. *Adametz*, 142 Conn. 218, 223, 113 A.2d 136 (1955) (same).