[L. A. No. 17265.   In Bank.   Nov. 25, 1941.]

WALTER L. MOORE, Appellant, v. VANDERMAST, INC. (a Corporation), Respondent.

Harvey & Harvey and Jack J. Rimel for Appellant.

Drumm, Tucker & Drumm and Forgy, Reinhaus & Forgy for Respondent.

GIBSON, C. J.—This action was brought to reform a written lease and to recover damages for a breach of the reformed lease. The plaintiff appeals from that portion of the judgment which denied his right to have the lease reformed and denied the recovery requested under the reformed provisions of the lease. No appeal was taken from that portion of the judgment granting plaintiff recovery for the defendant's breach of the lease as written.

The plaintiff, Walter L. Moore, is the owner of a four-story structure known as the ''Moore Building'' in the city of Santa Ana. The defendant corporation and its predecessors have been engaged in the merchandising business in that city for many years. Since 1929, the defendant has maintained a retail clothing store in the Moore Building which it leased from the plaintiff. During the year 1933, declining business conditions made it impossible for the defendant to make the rental payments specified in the fifteen-year lease entered into in 1929. A substantial arrearage in rentals consequently accrued which, according to the plaintiff, amounted to something over $20,000. It is admitted that the defendant was in desperate financial condition at that time and, as a result, negotiations were entered into for the purpose of drawing up a new lease which would permit the defendant to continue in business.

After considerable discussion between the parties in which each was aided by counsel, the lease which is the subject of the present action was executed on March 7, 1934. The lease was drafted by the plaintiff's attorney and was a so-called percentage lease, providing for a specified percentage of defendant's gross receipts as rental. The lease covered a five-year period and provided, among other things, that the rental to be paid by the defendant ''shall be the sum of Six Percent (6%) of the gross receipts from all its merchandising busi-

ness *done in the above demised premises. . . .* " (Italics ours.) The lease also contained a provision for a guaranteed minimum rental of $350. For the purpose of computing the rental "gross receipts" were defined to include "the amount received by Lessee from the sale of goods, wares, and merchandise . . . *sold from the hereinbefore described property and premises* in the ordinary course of Lessee's business as the same is now being conducted *in said location* and/or as the same may be conducted *thereat* in the future. . . . " (Italics ours.) The arrangement contemplated in the lease was carried out without dispute until the latter part of the year 1936 when the defendant opened a second merchandise store in the city of Santa Ana. The second store was located on premises in which the plaintiff had no interest. This division of defendant's clothing business brought about a substantial reduction in the gross receipts of the first store from which plaintiff's percentage as lessor was computed. The plaintiff made an unsuccessful attempt to secure a percentage of the gross receipts of defendant's entire merchandising business as rental under the lease, and thereafter brought this action for reformation of the lease.

The express provisions of the lease limit plaintiff's percentage to the gross receipts of the business done in the premises leased from him. It was alleged, however, that the language of the percentage lease limiting plaintiff's percentage to the gross receipts derived from the particular store located on his premises was inserted as the result of a mutual mistake of the parties. Plaintiff, therefore, seeks to have the lease reformed so as to provide for a rental computed upon the gross receipts from the lessee's entire business, regardless of the number of stores involved or the location of the stores. The trial court found against the plaintiff on all material issues and concluded that there was no mutual mistake in the execution of the percentage lease which would justify a reformation of the instrument.

Although plaintiff's contentions upon this appeal are stated in various ways, the basic point upon which he relies is that the evidence is insufficient to support the findings of the trial court. In this connection it should be noted that where one seeks to reform a written instrument by the introduction of extrinsic evidence, the courts have generally required clear and convincing proof, or something more than

a preponderance of the evidence, as the basis for such an invasion of the parol evidence rule. (*Sullivan* v. *Moorhead,* 99 Cal. 157, 161 [33 Pac. 796]; *Siem* v. *Cooper,* 79 Cal. App. 748, 754 [250 Pac. 1106]; Restatement, Contracts, § 511 (Calif. annotations); 22 Cal. Jur. 742; 5 Williston, Contracts (Rev. ed. 1937), p. 4450, § 1597; 9 Wigmore, Evidence (3rd ed. 1940), p. 331, § 2498.) Civil Code, § 3399. provides: ''When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention. . . . '' There is no allegation of fraud in the present case, or that one party knew or suspected that the other was acting under a mistake. It was therefore incumbent upon the plaintiff to establish, by clear and convincing evidence, that the objectionable language found in the lease was the result of a mutual mistake by the parties. (*Hochstein* v. *Berghauser,* 123 Cal. 681, 684 [56 Pac. 547]; *Burt* v. *Los Angeles Olive Growers' Assn.,* 175 Cal. 668, 675 [166 Pac. 993]; *California Trust Co.* v. *Cohn,* 9 Cal. App. (2d) 33, 40 [48 Pac. (2d) 744].)

██ After an extended trial, the court below found no mutual mistake in the execution of the lease which plaintiff sought to reform. In attempting to establish that this finding is unsupported by the evidence, plaintiff points out that for many years there had been only one Vandermast store in the city of Santa Ana. He argues that the actual understanding of the parties was that defendant would continue to operate as it always had, and that the rental was to be computed upon a percentage of defendant's total business which both assumed was to be operated from the single location. The mutual mistake relied upon by the plaintiff, therefore, is said to be the understanding of both parties that the defendant's business would continue to be operated as in the past, through a single store. An examination of the record shows that there is no evidence which indicates that the parties had any understanding on this point. It was testified by the parties and by the attorney who drafted the percentage lease that there was never any discussion of the possibility that Vandermast might open a second store.

In the absence of clear and convincing evidence to the contrary, a written instrument is presumed to express the true intent of the parties. (*Hochstein* v. *Berghauser, supra; Burt* v. *Los Angeles Olive Growers' Assn., supra; California Trust Co.* v. *Cohn, supra.*) This is particularly true where, as here, the instrument was drafted by an attorney representing the party seeking to alter the terms of the written instrument.

The plaintiff has not met the burden of proving there was a mutual mistake in the execution of the lease.

The judgment is affirmed.

Shenk, J., Curtis, J., Edmonds, J., Houser, J., Carter, J., and Traynor, J., concurred.