FILES, J.
 

 This is an appeal from a judgment in favor of the estate of a deceased partner against the surviving partners after an accounting. The undisputed facts which form the background for this action are as follows:
 

 John L. Thies and defendant Joseph Smith had been in business together since about 1931. In 1938 they entered into a written agreement of partnership to operate an automobile service station. Each partner was to share equally. On January 6,1939, Thies and Smith and Smith’s wife, the defendant Hazel Smith, entered into a written partnership agreement whereby the 1938 agreement was revoked. The 1939 agreement provided that ‘1 each partner will confine his entire time, efforts and talent to the business, ’ ’ salaries and drawings were to be equal, and profits were to be shared equally. The agreement stated: “This partnership shall continue for a period of twenty (20) years,” and also:
 

 “It is further mutually understood and agreed by and between the parties hereto that in the event of a partners death the whole of the partnership assets shall be and become the property of the surviving partners or partner in the same manner as would a joint tenant under a joint tenancy deed.”
 

 At the time, Thies was approximately 64 years of age and
 
 *821
 
 unmarried. Mr. Smith was 42 and Mrs. Smith 45. None of the parties had any children.
 

 On October 30, 1959, Hattie Pluth, a niece, was appointed guardian of the person and estate of Thies. On November 24, 1959, Thies, through his guardian, commenced this action against the two Smiths for dissolution of the partnership and for an accounting. This complaint did not mention the written agreement, the guardian apparently being uninformed of it at that time. On November 27, 1959, the attorney for the guardian wrote a letter to the Smiths declaring that “the partnership agreement heretofore entered into by and between you and Mr. Thies is terminated.” On December 7, 1959, an amended complaint was filed alleging that the parties had entered into a written agreement on January 6, 1939, that this agreement had expired January 5, 1959, that defendants had continued to carry on the business, had misapplied funds and had refused to account.
 

 Defendants answered and counterclaimed. They alleged, among other things, that the parties had originally agreed that the partnership was to continue for the joint lifetime of the parties, that in drafting the agreement the scrivener had inserted the 20-year term by mistake, and that none of the parties had discovered this mistake until after suit had been commenced; that to further the intention of the parties, they had made mutual wills and had entered into an agreement not to revoke those wills; that the title to the partnership real property had been taken in joint tenancy; that in consideration of and in reliance upon the agreement that the survivors would take all, defendants agreed to give Thies one-third of the profits even though he contributed no services, and that defendants are ready, able and willing to pay to the guardian the one-third share of the profits. Defendants prayed that the 1939 agreement be reformed, that Thies’ interest in the joint-tenancy property be adjudged to be a partnership asset, and that the covenant not to revoke the mutual wills be specifically enforced.
 

 Before the action could be tried Thies died on May 8, 1960. Hattie Pluth, as executrix, became the new plaintiff. Defendants filed a supplemental answer which alleged, among other things, that by reason of the death of Thies, defendants have succeeded to full ownership of the real property which had stood in joint tenancy.
 

 After a trial the court made findings of fact and an interlocutory judgment declaring that the partnership was
 
 *822
 
 “terminated” on November 27, 1959, and appointing a receiver and referee to liquidate the assets and take the accounting. The court found that the real property was a partnership asset, that no joint tenancy existed, that the terms of the partnership were as set forth in the written agreement of January 6,1939, which had never been modified, that Thies was entitled to one-third of the profits but that defendants had misappropriated funds and had refused to account to Thies.
 

 After the referee reported the court made new findings which included all of the interlocutory findings with some elaboration and added new matter taken from the referee’s report. It found that as of November 27, 1959, there was due to Thies as his share of profits withheld each year back to 1942, a total of $23,590.82; that the net worth of the partnership as of November 27, 1959, was $122,579.55, of which plaintiff was entitled to one-third, or $40,859.85. The court then made a final judgment ordering the receiver to sell the property and distribute the proceeds to the parties. Defendants are appealing from that judgment.
 

 Since the interlocutory judgment was not itself appealable
 
 (Bakewell
 
 v.
 
 Bakewell,
 
 21 Cal.2d 224 [130 P.2d 975]), all issues, including the matters set forth in the interlocutory judgment, are reviewable on this appeal. (Code Civ. Proc., § 956.)
 

 The Survivorship Clause in the Partnership Agreement
 

 Defendants contend that as a matter of law they are entitled to retain all of the partnership assets because the agreement of January 6, 1939, provides that in the event of a partner’s death the whole shall become the property of the survivors. Defendants contend that the 20-year limitation on the duration of the partnership was a mistake of the draftsman. Defendants themselves testified that their attorney was instructed to draw up a lifetime contract, and they did not discover the error until September 1959, after Thies had become incompetent.
 

 The trial court found against defendants on this fact issue of mutual mistake. The attorney who drew the 1939 agreement is not living, and hence defendants are the only living persons with direct knowledge of what the attorney was instructed to do. Why the parties should have selected a 20-year term is not shown by the evidence, but this absence of explanation is not surprising in view of the lapse of time and the death of material witnesses. The burden was upon defendants to establish the mistake by clear and convincing
 
 *823
 

 evidence;
 
 and whether they did so was a question for the trial court.
 
 (Moore
 
 v.
 
 Vandermast, Inc.,
 
 19 Cal.2d 94 [119 P.2d 129];
 
 Hochstein
 
 v.
 
 Berghauser,
 
 123 Cal. 681, 684 [56 P. 547].) The trial court was not obliged to accept the uncorroborated self-serving testimony of defendants as to the terms of a contract they made with a dead man when contradicted by an attorney-drawn writing signed by all parties. The trial court’s finding is further supported by the testimony of one of the service-station employees, Wanda Dugan, who said Thies had told her about the 20-year contract.
 

 Defendants argue that even if the contract is not reformed, the survivorship clause is applicable because the partnership continued to exist until the death of Thies. The trial court found that after the expiration of the 20-year term on January 5, 1959, the defendants continued to carry on the partnership “without the actual consent or agreement” of Thies, who was then 84 years of age, ill and incapacitated. The court also found that from January 6, 1959, until November 27, 1959, the partnership continued to operate as a partnership at will. The contradiction between the finding that Thies did not “consent” and a finding of a partnership “at will” during this period does not prejudice defendants, who have insisted that the partnership did exist at all times until Thies died.
 

 On November 27, 1959, Thies’ guardian, through her attorney, sent a letter to defendants declaring the partnership terminated. The trial judge found that “said partnership was terminated and dissolved on November 27,1959. ’ ’ Defendants criticize this use of the word “terminated,” pointing out that on dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed. (Corp. Code, § 15030.) No harm is done by this misuse of a word. It is abundantly clear that the trial court treated November 27, 1959, as the date of dissolution, this being the date on which it became the duty of defendants to cease carrying on, as distinguished from winding up, the business. (Corp. Code, §§15029, 15033.)
 

 The question is whether the survivorship clause was effective only during the time the partners were carrying on the business (i.e., the 20-year term plus any extension mutually agreed upon) or whether it continued in effect after dissolution, during the time required to wind up partnership affairs. The survivorship clause, read literally, contains no time limitation. However it is a part of an instrument which declares:
 

 
 *824
 
 “This partnership shall continue for a period of twenty (20) years.' ’ Evidently the draftsman there referred to the period prior to dissolution. We agree that the trial court correctly concluded that the survivorship clause likewise referred only to the 20-year term—the period during which the parties were carrying on, as distinguished from winding up, the business.
 

 If the survivorship clause were construed to continue in effect after dissolution, this would result in a most indefinite time period. No one could ever predict when it would expire because the time required to wind up is subject both to the fortunes of commerce and the diligence or resistance of the parties. If the survivorship clause continued in effect during the winding up period, one party could prolong it indefinitely (as defendants sought to do here) by refusing to wind up.
 

 Allowance for Services of Defendants
 

 Defendants contend that the court erred in failing to award to them compensation for the value of their services to the partnership in excess of the value of the services rendered by Thies. Defendants acknowledge that in the absence of agreement a partner is not entitled to compensation for his services (Corp. Code, § 15018, subd. (f)), but defendants claim such an agreement existed in this case, or should be implied. The short answer is that the trial court found that there was no such agreement, and this finding is amply supported by the record. Specifically, the trial court found that the written agreement of January 6, 1939, was not modified orally or in writing. This agreement provides that all salaries and drawings shall be equal, the amount thereof to be mutually agreed upon, and that the three parties shall share equally in profits and losses. The agreement also provides that 11 each partner will confine his entire time, efforts and talent to the business.” As a background for the claimed oral agreement to give them a bigger share of the profits, defendants charge Thies with a breach of this “entire time” clause because as he grew older he stopped working as a service-station attendant. However, defendants alleged in their answer that at the time of entering into the January 6, 1939, agreement Thies “was substantially in retirement” and sought this partnership so that he might receive a regular monthly income. Under the circumstances the covenant to ‘ ‘ confine his entire time ’ ’ to the business is not the equivalent of a promise to work the entire time. The language in its context indicates an intention that the older man would devote whatever working time he had to this business and to no other.
 
 *825
 
 It is not claimed that Thies was able to do more work than he did, or that he gave any time or effort to any other enterprise.
 

 Furthermore, in their counterclaim for the enforcement of the alleged agreement not to revoke the mutual wills, defendants alleged that they were induced to give Thies one-third of the profits, even though he contributed no services, because he represented that he would not revoke his will in their favor; further, that the payment of a full one-third share to Thies was additional consideration for his agreement not to revoke his will. The defendants further alleged that they “have at all times herein mentioned to the present and still do pay to said John L. Thies through his said guardian, Hattie Pluth, his one-third share of the net profits of the business of said partnership, and said defendants were at all times and still are ready, able and willing to complete the said contract on their part. ’ ’
 

 In contrast, the trial court found that defendants have paid to Thies some $23,590.82 less than his one-third share, and that they have never rendered any accounting to him. The trial court was justified in concluding from the whole record that there was no agreement, express or implied, to pay Thies less than the full third which the 1939 agreement gave him.
 
 *
 

 The Ownership of the Beal Property
 

 Between 1940 and 1942 the partners purchased four lots on which the partnership business was conducted. Payment was made out of partnership funds. Title to three lots was taken in the names of the three partners as joint tenants, while title to the fourth lot was taken in the names of the two Smiths as joint tenants. In their answer filed January 14, 1960 (while Thies was still alive), defendants alleged that this improved real property was a partnership asset.
 
 *826
 
 In a pretrial statement filed April 14, 1960, defendants admitted that the real property was a partnership asset. The pretrial order recites that the real property is, “by both of the parties, conceded to be partnership assets.”
 

 On August 5, 1960, after the death of Thies, defendants filed a supplemental answer in which they claimed the real property as surviving joint tenants. The trial court found that the real property belonged to the partnership and included it among the assets for which defendants are accountable. Whether or not real property standing in the names of individual partners is partnership property is a question of fact.
 
 (Bumb
 
 v.
 
 Bennett,
 
 51 Cal.2d 294, 301 [333 P.2d 23].) The record here provides a sufficient basis for the trial court’s finding.
 

 Dividing the Assets
 

 The final judgment ordered that the receiver sell the partnership business and distribute the proceeds, after payment of partnership obligations and receivership expenses, as follows :
 

 (a) To plaintiff, the sum of $71,069.20 with interest at 7 per cent per annum from November 27, 1959, to the date of payment. This sum was made up from the following items:
 

 (1) One-third of the net worth as determined by
 

 the court’s appraiser as of November 27, 1959.$40,859.85
 

 (2) The amount by which one-half of the defendants’ total drawing exceeded the drawings of
 

 Thies during the term of the partnership..... 23,590.82
 

 (3) Interest on the deficiency in Thies’ drawing
 

 to November 27, 1959 ...................... 6,618.53
 

 Total ..................................$71,069.20
 

 (b) To defendants, any remaining money up to a total of $51,510.35.
 

 (e) If any amount remains, one-third to plaintiff and two-thirds to defendants.
 

 It will be observed that the judgment requires that the deficiency in Thies’ drawings be paid out of defendants’ share of the partnership, and not out of the partnership as a whole. This is an error. Thies was entitled to receive from the partnership an amount equal to one-half of what the two defendants took. Paying it to Thies ’ executrix out of the assets of the partnership, as it should be paid, will reduce the net worth of the partnership, including plaintiff’s portion.
 

 Although plaintiff is entitled to interest on the
 
 *827
 
 amounts which were wrongfully withheld, there appears to be no reason for computing it to November 27, 1959, and then charging interest on interest from that date. Simple interest from the date each portion was payable to the date of judgment is the proper measure of damages for the detention of money. (Civ. Code, § 3287; Stats. 1919, p. lxxxiii. See
 
 Fuller
 
 v.
 
 White,
 
 33 Cal.2d236, 240 [201 P.2d 16].)
 

 The provision of the judgment that plaintiff receive the appraised value of the partnership cannot be supported under the circumstances of this case. When dissolution is caused in any way except in contravention of the partnership agreement, each partner may have the partnership property applied to discharge its liabilities and the surplus applied to pay in cash the net amount owing to the respective partners. (Corp. Code, § 15038, subd. (1).) This is the relief demanded by plaintiff in the complaint, the amended complaint and in the notice of dissolution. When a partnership is liquidated the assets are sold and the proceeds divided, or the assets may be distributed in kind, but it is ordinarily improper to require one partner to pay the other the appraised value of an asset.
 
 (Harper
 
 v.
 
 Lamping,
 
 33 Cal. 641, 649;
 
 Rice
 
 v.
 
 Watkins,
 
 85 Cal.App.2d 44, 51 [191 P.2d 810].)
 

 Corporations Code, section 15042, provides that if the business is continued under specified conditions the retiring partner may have the value of his interest as of the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to this value with interest or a proportion of the profits after dissolution. The conditions under which that section may be applied include the assignment of a partnership interest, the continuation of the business by consent of both the retiring and continuing partners, continuation by innocent partners after wrongful dissolution by another, and expulsion of a partner. None of those conditions exists in this ease.
 

 Casida
 
 v.
 
 Roberts,
 
 51 Cal.2d 853 [337 P.2d 829], cited by plaintiff, falls within the literal reading of section 15042 because the partnership was dissolved through the expulsion of the plaintiff. Defendant had the benefit of continuing the business so long as he saw fit, and the Supreme Court held that plaintiff was entitled to the value of his interest as of the date of expulsion under section 15042.
 

 Two circumstances make it improper to give to plaintiff here the appraised value of the assets—as distinguished from the proceeds of liquidation. The first is that Thies him
 
 *828
 
 self, in the exercise of his rights, demanded.the dissolution and liquidation. The second is that defendants have not received the benefit of keeping the business after dissolution. We may assume that even in cases not falling literally within section 15042 it may be equitable to require a partner who retains the business as a going concern to pay off the retiring partner on an appraised valuation. (See
 
 Nulund
 
 v.
 
 Pruyn,
 
 99 Cal.App.2d 603, 613 [222 P.2d 261];
 
 Wikstrom
 
 v.
 
 Davis,
 
 211 Ore. 254 [315 P.2d 597].) In such case the going-concern value is preserved and the appraisal method would give the retiring partner his fair share. Where the business is to be liquidated, the award of an appraised value, plus interest, is a harsh and drastic remedy, for it casts upon one party the full risk that the property may not bring at forced sale the amount of the appraisal.
 

 In the present case the trial court on September 23, 1960, made an interlocutory order taking the business away from defendants and placing it in the hands of a receiver who is ordered to liquidate it as soon as the judgment becomes final. In determining the value of the partnership assets as of the date of dissolution the trial court included $30,000 for good will. There is no evidence that any of this good will value could be converted into cash at the receiver’s sale. The court-appointed appraiser included nothing for good will in his appraisal of the market value of the business. The harshness of the judgment is augmented by the provision that plaintiff share in the excess if the property brings in more than the amount of the appraisal plus expenses.
 

 Plaintiff argues that defendants should be treated as trustees who converted the trust property as of the date of dissolution. The trial court made no finding, and the evidence does not indicate any basis for finding that defendants did anything wrongful after the notice of dissolution on November 27, 1959, except to defer winding up the business. This delay occurred because of the dispute between the parties as to whether plaintiff was entitled to a winding-up. The civil action to resolve this dispute was commenced by plaintiff three days before the dissolution, and was resolved as quickly as the trial court was able to dispose of it. By continuing to operaté the service station, defendants were preserving it as a going business, pending a decision in court. The assets, as they stood on the date of dissolution, are intact, along with subsequently earned profits. Plaintiff’s interest was subjected to the claims of creditors during that ten months’ period, but the exposure
 
 *829
 
 was harmless,, as the business earned a profit, and the liabilities, as the receiver’s report shows, were less than two per cent of the amount which the court found to be the market value of the assets. The legal controversy which has delayed the liquidation is a difficult one. There is no reason to penalize defendants in the liquidation. Defendants’ failure to pay Thies' his share of the drawings was reprehensible, and for this plaintiff is entitled to a recovery of money, plus interest. The dissolution itself is on a different basis. It arises not from wrongdoing, but as a result of the contract which the partners made. In liquidation plaintiff is entitled only to the one-third which the contract contemplates. The costs of the receivership may, in the discretion of the court, be imposed on defendants as the losers in the controversy over the contract rights.
 

 The Agreement not to Revoke Thies’ Will
 

 The answer filed by defendants contained counterclaims which alleged in substance that the three partners had orally agreed to make mutual wills whereby each would give all of his interest in the partnership property to the surviving partner, that pursuant to this agreement each of the parties made such a will; and that on December 31, 1951, each of the parties executed a written agreement not to revoke the mutual wills.
 

 A supplemental counterclaim, filed after Thies’ death, contained similar allegations. Both the original answer and the supplement prayed that the agreements to make mutual wills be enforced.
 

 Evidence concerning this alleged agreement was introduced at the trial. The trial court made no findings of fact on this subject other than the catchall finding that all of the allegations of the answer and supplemental answer were untrue except those specifically found to be true. Neither the conclusions of law nor the judgment refers to the alleged agreement to leave the property by will.
 

 A contract to make a will may be enforced in equity by impressing a trust upon the property which the decedent had promised to leave. The property in question is subject to administration, and prosecution of the action on the contract does not interfere with administration of the estate. Although the executor may be made a party defendant to such an action, the real parties in interest are those who would have received the property but for the contract. (See
 
 *830
 

 Ludwicki
 
 v.
 
 Guerin,
 
 57 Cal.2d 127, 130-132 [17 Cal.Rptr. 823, 367 P.2d 415].) A beneficiary under the will who is not made a party to the action is not bound by the judgment in such a case. (See
 
 Bank of California
 
 v.
 
 Superior Court,
 
 16 Cal.2d 516, 524 [106 P.2d 879].)
 

 The foregoing principles compel the conclusion that the counterclaims in question were not properly before the trial court. A counterclaim “must tend to diminish or defeat the plaintiff’s recovery.” (Code Civ. Proc., § 438.) The sole plaintiff here is the executrix, suing for an accounting. Since the property is subject to administration, plaintiff is entitled to an accounting, regardless of who is ultimately entitled to distribution. A judgment for the enforcement of a contract to make a will in this case would be worthless because the court has before it none of the parties who could be adversely affected by a valid judgment. The trial court properly refrained from purporting to adjudicate this issue.
 

 The application to take evidence on appeal is denied.
 

 The judgment is modified by deleting subparagraphs C, D and E of paragraph 5 which instructs the receiver concerning disposition of the proceeds of the sale. The following is substituted :
 

 “C. Pay to plaintiff $23,590.82 with interest at the rate of 7 per cent per annum from the end of the year each portion thereof was withheld from John L. Thies to the date of judgment, in the amount of $8,957.94, making a total of $32,548.76, and interest on said total at 7 per cent per annum from the date of judgment (April 25, 1961) until paid.
 

 “D. Pay to the plaintiff and to defendant Joseph Smith and defendant Hazel Smith each one-third of the balance on hand, provided, however, that the expenses of the receivership and the referee shall be charged against the respective shares in such proportion as the court deems just at the close of the receivership.”
 

 As so modified, the judgment is affirmed.
 

 Shinn, P. J., and Ford, J., concurred.
 

 A petition for a rehearing was denied August 20, 1962, and appellants’ petition for a hearing by the Supreme Court was denied September 11, 1962.
 

 *
 

 Respondent has applied to this court under California Rules of Court, rule 23 for leave to produce additional evidence to support the judgment. The proposed evidence consists of copies of three partnership income tax returns for the years 1951, 1954 and 1955, respectively, each signed by the defendant Hazel Smith. Bach return states that Thies devoted one hundred per cent of his time to the business and was entitled to one-third of the profits. The purpose of this offer is to rebut the testimony of defendants that Thies did not work and had agreed to accept less than the one-third provided for in the 1939 agreement. Respondent’s counsel states that these tax returns were in his possession at the trial and were discussed in chambers but were not offered in evidence.
 

 Since it is not the function of this appellate court to weigh evidence, it is futile to offer the documents here. If the record made in the trial court did not support the findings on this issue, the judgment would be reversed.