In re Richard L. WINGO, Ronald R. Butler, dba The Liquor Store, Debtors.

Douglas JONES, Jr., Onie B. Jones, Appellants,

v.

Richard L. WINGO, Ronald R. Butler, dba The Liquor Store, Appellees.

BAP No. NC 87–1128.
Bankruptcy No. 4–86–00085 WS.
Adv. No. 486–0191–AW.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 29, 1987.

Decided June 23, 1988.

Robert L. Ward, Law Offices of Robert L. Ward, Oakland, Cal., for appellants.

Claude D. Ames, Massengale & Ames, Oakland, Cal., for appellees.

Before VOLINN, ASHLAND and MOOREMAN, Bankruptcy Judges.

## OPINION

VOLINN, Judge.

Appellants Douglas Jones, Jr. and Onie B. Jones contend that the bankruptcy court erred in denying them relief in the form of a declaratory judgment that they had good and clear title to real property that they purchased at a trustee's sale on the foreclosure of a second deed of trust. We affirm the bankruptcy court's judgment; however, we conclude that the bankruptcy court erred in entering certain conclusions of law to which appellants assign error.[1]

## FACTS

On January 9, 1986, Richard L. Wingo and Ronald E. Butler, d/b/a "The Liquor Store," filed as a partnership under Chapter 11. Schedule B–1 listed as assets of the estate the residences of both Wingo and Butler, and Schedule B–4 listed the residences as exempt in the partnership schedules. On January 14, 1986, the petition was amended to delete the names of the two partners, Wingo and Butler. On February 28, 1986, after his residence had been sold at the foreclosure sale as discussed below, Richard Wingo, d/b/a "The Liquor Store," filed a petition under Chapter 7. On March 10, 1986, the partnership Chapter 11 was converted to a Chapter 7.[2]

Wingo and Butler had purchased The Liquor Store from Martin Frankel for $115,000. They made a cash down payment and executed a promissory note for $70,000, secured by second deeds of trust on each of their residences. Apparently because the note was secured to the full amount of $70,000 on each of their residences, Wingo and Butler believed that to protect their homes, they should convey a fee interest equivalent to $35,000 in each of their residences to the partnership. Wingo testified that he transferred such an interest in his residence "on a regular piece of paper" that was not notarized and was not signed by his wife. He no longer had a copy of the document evidencing the transfer.

California Trust Deeds, Inc. was the trustee on the second deed of trust on Wingo's residence. The partnership apparently fell behind in its payments to Frankel. California Trust Deeds gave notice of a foreclosure sale of Wingo's residence to take place on January 27, 1986. The sale was postponed until February 4, 1986, at which time the Jones purchased the property for $14,300. The Jones did not know of the partnership bankruptcy at the time of purchase. However, they were later informed by the title company that the Chapter 11 proceeding pending at the time of the sale clouded title to their property. They commenced an adversary proceeding for declaratory relief that they had clear title to the property.

Douglas Jones testified that he had been warned by a fellow bidder that purchasing

1. Both parties filed supplemental excerpts of record which reveal that there is another adversary proceeding pending before the bankruptcy court. The subject property has been sold to yet another party; at issue in the pending adversary proceeding is the right to the proceeds of that sale.

The bankruptcy judge has stayed the proceedings in the second adversary proceeding pending the outcome of this appeal. Both parties in their briefs have invited the Panel to resolve issues in the pending adversary proceeding. We

decline the invitation, for to accept it would require us to render an advisory opinion and to invade the province of the trial court. However, we address the findings and conclusions in the instant case more thoroughly than we ordinarily might to possibly clarify the effect of this proceeding on the pending adversary action.

2. The trustee is not a party to this appeal, nor is it clear that he was a party to the adversary proceeding in the bankruptcy court.

property at foreclosure sales carried the risk of involving the purchaser in a bankruptcy. After the sale, and before writing his check for the purchase price, Jones asked an employee of California Trust Deeds if there were proceedings in bankruptcy involving the property. The employee reported that there were not. It appears that no notice of the partnership bankruptcy was filed in the Alameda County Recorder's office. Herb Leibowitz, an employee of California Trust Deeds, testified that Frankel never informed him that the partnership property was involved in bankruptcy.

Frankel, on whose behalf the foreclosure sale took place, apparently did not testify; evidence as to what he knew of the filing of a bankruptcy petition was introduced through the testimony of others. Wingo testified that sometime before the February sale he told Frankel that he was going to file bankruptcy.[3] Wingo also testified that when Frankel told him that the foreclosure sale originally scheduled for January 27, 1986 had been canceled, Wingo told him that there was a bankruptcy proceeding.[4]

The bankruptcy court found that California Trust Deeds erred in reporting that there were no bankruptcy proceedings that would cloud title to the property and that Martin Frankel had informed California Trust Deeds, his agent, that a bankruptcy had been filed by the defendants, so that California Trust Deeds had actual notice of the filing of a bankruptcy by the debtors. The bankruptcy court concluded that knowledge of the bankruptcy filing was imputed to the plaintiffs by way of their agency relationship with California Trust Deeds; that the property was the property of the bankruptcy estate; and that plaintiffs did not receive clear title.

Appellants assign error to the bankruptcy court's conclusion that knowledge of the bankruptcy filing was imputed to plaintiffs by way of their agency relationship with California Trust Deeds. Appellants also contend that the bankruptcy court erred when it ruled that Wingo's residence was property of the estate. Finally, they assert that the court erred in concluding that the trustee's deed from California Trust Deeds failed to transfer any right, title, or interest to the appellants. We affirm the order entered by the bankruptcy court.

## DISCUSSION

### A.

The appellants Jones contend that the bankruptcy court erred in concluding that the property was that of the bankruptcy estate and therefore entitled to the protection of the automatic stay. They support this contention by reference to Wingo's testimony that the instrument by which he conveyed an interest in his residence to the partnership was not in the form of a deed. In addition, Wingo testified that the instrument was not signed by Brenda Hathaway, who is apparently his wife. The Jones therefore assert that the transfer was invalid under California community property law, specifically Cal.Civ. Code § 5127 (West.Supp.1988). Assuming *arguendo* that the Jones have standing to raise these challenges to the transfer, and that the transfer to the partnership was indeed ineffectual,[5] we nonetheless conclude that the bankruptcy court correctly determined that the property was entitled to the protection of the automatic stay under 11 U.S.C. § 362(a), and that the trust-

---

3. It is not apparent whether Wingo told Frankel that he was going to file as an individual or that the partnership was going to file.

4. Again, it is unclear whether Frankel knew that it was the partnership that was in bankruptcy.

5. There is a split of authority among the California Courts of Appeal as to whether an encumbrance of community property by one spouse contrary to the provisions of Cal.Civ.Code

§ 5127 is valid and binding as to the consenting spouse's interest, and voidable as to the consenting spouse's one-half interest, or void altogether. *In re Jones,* 51 B.R. 834, 840 (Bankr. C.D.Cal. 1985) (concluding that if the California Supreme Court were confronted with the issue, it would conclude that a deed of trust must be signed by both spouses to be valid). In any event, it is not apparent from the record that Wingo's residence was community property.

ee's deed failed to transfer to appellants any right, title or interest to the property.

With certain exceptions not relevant here, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416, 1419 (9th Cir.1985). The bankruptcy court entered no finding of fact with respect to the transfer of an interest in Wingo's residence to the partnership. The bankruptcy court did enter a finding that the property was listed on the partnership's Schedule B–1 filed with the Chapter 11 petition, and concluded that the property was property of the bankruptcy estate.

We conclude that there was sufficient evidence to support a finding that the partnership had a *partial interest* in Wingo's residence, which became property of the estate entitled to the protection of the automatic stay. However, the evidence does not support the bankruptcy court's conclusion that the entire residence was the property of the bankruptcy estate.

 Title to real property of a general partnership may be held in the name of one or more of the partners, as well as in the name of the partnership. *See* Cal.Corp. Code § 15010 (West Supp.1988); *Wroblewski v. Brucher,* 550 F.Supp. 742, 746 (W.D. Okla.1982) (applying California law). Therefore, even if Wingo did not effectively transfer *title* in an interest in his residence to the partnership, and title to that interest remained in his name, that interest may nonetheless be partnership property. Whether or not real property standing in the names of individual partners is partnership property is a question of fact. *Pluth v. Smith,* 205 Cal.App.2d 818, 23 Cal.Rptr. 550, 555 (1962). Wingo's testimony, uncontroverted on the record before us, is that he transferred an interest in his residence, to the extent of $35,000, to the partnership. Therefore, even if the transfer was ineffective from the standpoint of compliance with the formalities attendant to transfers of real property or with California community property law, the evidence supports the conclusion that Wingo transferred an interest in his residence to the partnership. The automatic stay of 11 U.S.C. § 362 operated to stay any proceedings against that property. The general rule is that acts in violation of the automatic stay are void, not merely voidable. *See Kalb v. Feuerstein,* 308 U.S. 433, 438, 440, 60 S.Ct. 343, 345–46, 346–47, 84 L.Ed. 370 (1940); *In re Stringer,* 847 F.2d 549, 551 (9th Cir.1988); *In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 816 (9th Cir.1985). There are situations in which a technical violation of the stay will not necessarily render that violation void. *In re Brooks,* 79 B.R. 479, 481 (9th Cir. BAP 1987). However, the general rule, that actions taken in violation of the automatic stay are void, is usually applied to transfers of property. *In re Sambo's Restaurants, Inc.,* 754 F.2d at 816. This is such a case. Because the foreclosure sale was in violation of the automatic stay, the sale was void. The bankruptcy court correctly held that the California Trust Deeds' trustee's deed failed to transfer any right, title, or interest to the property, and properly entered an order denying appellants declaratory relief.

### B.

 There is one important limitation of the general principle that actions taken in violation of the automatic stay are void. *See* 2 L. King, *Collier on Bankruptcy,* ¶ 362.11 (15th ed. 1988). That limitation is codified in 11 U.S.C. § 549(c), which addresses the power of the trustee to avoid postpetition transfers. Section 549(c) states, in pertinent part:

> (c) The trustee may not avoid … a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith

purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected. Thus, the trustee may not avoid a transfer of real property to a good faith purchaser without knowledge of the commencement of the case, unless a copy or notice of the petition was filed in the manner specified before the transfer was perfected. It follows that avoidance of a postpetition transfer of real property pursuant to 11 U.S.C. § 549(c) hinges on whether the transferee had knowledge, either constructive or actual, of the filing of a petition.

Although this case does not explicitly pose the issue of avoidance of a postpetition transfer of property brought by the trustee pursuant to 11 U.S.C. § 549(a), the Jones' status as a transferee against whom such a transfer could not be avoided was at issue in the case.[6] The bankruptcy court concluded that knowledge of the bankruptcy filing was imputed to the Jones by way of their agency relationship with California Trust Deeds. This conclusion is based upon the trial court's findings that Martin Frankel informed California Trust Deeds, his agent, that a bankruptcy had been filed by the defendants, and that California Trust Deeds thus had actual notice of that filing.

We review findings of fact for clear error, and conclusions of law de novo. See In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir.1985). We find little support in the sparse record for the bankruptcy court's findings that California Trust Deeds had actual knowledge of the filing of a petition in bankruptcy because Frankel had so informed them. First, it is not apparent from the record that Frankel actually knew that either Wingo or the partnership had filed bankruptcy. Wingo testified that he told Frankel he was going to file bankruptcy. Wingo also testified that Frankel told him that the foreclosure sale initially scheduled for January 27, 1987 was canceled, and he informed Frankel of the bankruptcy proceeding. It is not clear when Frankel learned of the filing from Wingo, but it can be inferred that it was when Frankel informed Wingo of the cancellation of the foreclosure sale.

Regardless of whether or not Frankel knew of the bankruptcy, it does not appear in the record before us that he ever informed California Trust Deeds. Herb Leibowitz testified Frankel never informed him that property belonging to the partnership and Wingo was involved in a bankruptcy. Leibowitz also testified that Frankel called California Trust Deeds several times to check if a bankruptcy had been filed "because he had been told by one of the people involved that there was going to be a bankruptcy filed." However, there is no direct evidence that Frankel told Leibowitz that there had been a filing. The debtors assert on appeal that Frankel canceled the January 27 foreclosure sale because Wingo had informed him that a petition had been filed; therefore, Wingo knew that a petition had been filed before the foreclosure sale took place. The record does not explicitly support that contention; at best, it supports the inference that when Frankel informed Wingo that the foreclosure sale had been canceled, Wingo in turn told Frankel that a bankruptcy petition had been filed. The testimony of Herb Leibowitz, an employee of California Trust Deeds, indicates that the foreclosure sale was postponed not because of the filing in bankruptcy, but because there was a federal tax lien on the property and additional time

---

6. The Jones alleged that they were good faith purchasers for a present fair equivalent value as defined in 11 U.S.C. § 549(c); that they were without knowledge of the commencement of the case; that no copy or notice of the petition was received, as allegedly required by 11 U.S.C. § 549(c); and that the transfer was so perfected that a bona fide purchaser of the property could not acquire an interest superior to that of the Jones. Due to the fact that the transcript of hearing is far from complete, we cannot ascertain to what extent the Jones' status as a transferee without knowledge of the bankruptcy was an issue. However, the trial judge did render findings and conclusions that went to that issue. The issue of whether or not those findings and conclusions would operate as collateral estoppel in future proceedings is not before us.

was needed to give the Internal Revenue Service notice of the sale.

 Assuming *arguendo* that California Trust Deeds did have knowledge of the filing of a petition by Wingo or the partnership, and the trial court's findings of fact were thus not clearly erroneous, the bankruptcy court erred in concluding that knowledge of the bankruptcy filing was imputed to the plaintiffs by way of their agency relationship with California Trust Deeds. It is true that under California law, the knowledge of an agent is imputed to its principal:

> As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.

Cal.Civ.Code § 2332 (West 1985). The imputation of knowledge is a legal fiction, and as such, is a useful analytical tool. However, reason and equity are sometimes lost in such analysis. California Trust Deeds was Frankel's agent for the purpose of conducting a forced sale of the property for the beneficiary of the deed of trust. In that capacity, it could hardly be the buyer's agent. There is nothing in the record to show any connection between Jones and the trustee. We conclude that even if California Trust Deeds did have notice that Wingo or the partnership had filed a petition in bankruptcy, the imputation of that notice to the Jones under Cal.Civ. Code § 2332 is not "knowledge" within the meaning of 11 U.S.C. § 549(c). We therefore conclude that the trial court erred in holding that knowledge of the bankruptcy filing was imputed to the plaintiffs by way

of their agency relationship with California Trust Deeds.[7]

## CONCLUSION

It is clear that Frankel and his agent sold property of the estate in violation of the automatic stay. We affirm the trial court in this respect, and in its denial of declaratory relief to the Jones. This ruling is without prejudice to the presentation and adjudication of any issue relating to the rights of the parties to the proceeds of the sale of the subject property in the pending adversary proceeding, Case No. 4–87–0153, in the United States Bankruptcy Court for the Northern District of California.

---

**7.** We are particularly troubled by the imputation of knowledge on the basis of an agency relationship in this case. The existence of an agency relationship is a question of fact. *Penthouse Intern., Ltd. v. Barnes,* 792 F.2d 943, 947 (9th Cir.1986) (applying California law); *Burr v. Capital Reserve Corp.,* 71 Cal.2d 983, 80 Cal. Rptr. 345, 353, 458 P.2d 185, 193 (1969). The only finding of fact with respect to the status of California Trust Deeds as the Jones' agent is Finding of Fact 11: "The trustee, California Trust Deeds, Inc., indicated in a response to a

question from the Court that they represented all parties ..." In light of Douglas Jones' testimony as to the circumstances surrounding the purchase of the disputed property, that is, that he bought it at a foreclosure sale from California Trust Deeds, who was the trustee on the deed of trust, we question whether there was an agency relationship which would justify the imputation to the Jones of whatever knowledge California Trust Deeds possessed regarding a bankruptcy petition affecting the property.